NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SAUL HERNANDEZ, : | |
| Petitioner, : | Civil Action No. 11-1049 (FLW) |
| v. : | **O P I N I O N** |
| GREG BARTKOWSKI et al., : | |
| Respondents. : | |

**WOLFSON,** District Judge:

Petitioner Saul Hernandez ("Petitioner") filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254(a) challenging a judgment of conviction entered by the Superior Court of New Jersey upon Petitioner's guilty plea. See Docket Entries No. 1 and 4 (original and amended Petitions). Following this Court's order advising Petitioner of his rights under Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), Respondents were directed to file an answer and duly complied, and Petitioner traversed. See Docket Entries Nos. 2, 5, 9-17.

For the reasons expressed below, the Court will dismiss the Petition with prejudice and will decline to issue a certificate of appealability. See 28 U.S.C. §§ 2253(c), 2254(a), (b), (c).

**I.  BACKGROUND**

The factual predicate underlying Petitioner's conviction follows: on March 15, 2003, Petitioner was in a park in Old Bridge, New Jersey, with a certain Ms. Irene Luengas, with whom Petitioner had had a romantic relationship. During that park outing, Ms. Luengas made certain comments about Petitioner, Petitioner's family and Petitioner's car; apparently, these

comments upset Petitioner, who punched Ms. Luengas in the neck three times, causing her to fall.  Immediately thereafter, he went to his car, retrieved a couple of ropes and tied them, one after another, around Ms. Luengas' neck, intentionally causing her asphyxiation.  Ms. Luengas died from these injuries, and Petitioner was charged with first-degree murder, first-degree aggravated sexual assault and possession of a weapon for an illegal purpose.  He pled guilty to the first-degree murder charge pursuant to a plea agreement negotiated between his defense counsel and the State.  See, generally, Docket Entries Nos. 12-3 (Petitioner's PCR brief) and 13-1 (State's PCR brief).

Petitioner's original Petition asserted only two grounds, namely: (1) "Petitioner['s] Sixth Amendment right to [effective assistance of] counsel was violated [because, although] an interpreter was appointed [to assist Petitioner (since] Petitioner speaks Spanish), th[at] interpreter was not utilized translating English into Spanish[,] so Petitioner [was not] fully informed and able to comprehend what took place during the plea [proceedings in] open court"; and (2) "Petitioner should have been given an evidentiary hearing [as to effectiveness of his] counsel['s] . . . assistance [during the PCR proceedings when Petitioner raised the aforesaid insufficient interpretation challenges]."  Docket Entry No. 1-2, at 6-7.  Petitioner's amended Petition, a fifty-one page submission, added a multitude of additional claims in addition to reasserting challenges to defense counsel's performance based on the allegedly insufficient assistance of the interpreter, and that Petitioner should have been afforded an evidentiary hearing during his PCR proceedings. Petitioner also asserts, inter alia, that the trial judge abused his discretion by imposing the sentence recommended by the prosecutor and expressly agreed to by Petitioner and his defense counsel, that the prosecutor committed misconduct, that the sentence

2

imposed upon Petitioner was illegally lengthy, that Petitioner was denied his right to a fair trial, that Petitioner's counsel failed to investigate either the benefits or the existence of the factual predicate needed for assertion of an "intoxication" defense.[1]  See, generally, Docket Entry No. 4.

Respondents' answer focused solely on the two grounds asserted in the original Petition and recited in the amended Petition (i.e., the sufficiency of the interpretation and the denial of an evidentiary hearing during Petitioner's PCR).  See Docket Entry No. 16.  Petitioner's traverse expressed disagreements with the gist of Respondents' position as to these issues and, in addition, asserted that Respondents "failed to prosecute" their case by failing to comply with the Court's order in not addressing the other grounds recited in his Petition.  See Docket Entry No. 17.

## II.  STANDARD OF REVIEW

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law:

> [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dept., 128

---

[1] The Court presumes Petitioner's desire to refer to the diminished capacity defense.

3

F.3d 152, 159 (3d Cir. 1997). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221 (1982). "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable. It is unnecessary in such a situation to inquire whether the prisoner preserved his claim before the state courts." Engle v. Isaac, 456 U.S. 107, 120 n.19 (1982). "[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997). Moreover, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997) (citation omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985).

     A district court must give deference to determinations of state courts. Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996). Federal courts "must presume that the factual findings of both state trial and appellate courts are correct, a presumption that can only be overcome on the basis of clear and convincing evidence to the contrary." Stevens v. Delaware Correctional Center, 295 F.3d 361, 368 (3d Cir. 2002). Where a federal claim was "adjudicated on the merits" [2] in state court proceedings, § 2254 does not permit habeas relief unless adjudication of the claim

     (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or

---

[2] "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001). A state court may render an adjudication or decision on the merits of a federal claim by rejecting the claim without any discussion whatsoever.

4

    (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is "'contrary to' a Supreme Court holding if the state court 'contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Under the "'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable. Id. at 409-10. A court begins the analysis by determining the relevant clearly established law. See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412.

### III.  DISCUSSION

**A. Petitioner's Plea**

The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary [and] intelligent choice among the alternative courses open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970); see also Boykin v. Alabama, 395 U.S. 238, 242 (1969). "Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial[,]" including the defendant's privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers.

Boykin, 395 U.S. at 243.  The voluntariness and intelligence of one's decision to accept a plea is determined by "considering all of the relevant circumstances surrounding it."  Brady v. United States, 397 U.S. 742, 749 (1970).  Relevant circumstances include the petitioner's statements during the plea colloquy:

> [T]he representations of the defendant, his lawyer, and the prosecutor at [the plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

Importantly, once a voluntary and intelligent guilty plea has been entered by a criminal defendant, all other non-jurisdictional defects in the proceedings prior to the plea are waived, including all claims of "denial of fair trial," inadequacies in conduct of the presiding tribunal, ineffective assistance of counsel – "except insofar as such inadequacies or ineffectiveness is alleged to have rendered the guilty plea itself "involuntary" and/or "unintelligent."  United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000).  As the Supreme Court summarized:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann.

Tollett v. Henderson, 411 U.S. 258, 267 (1973) (referring to McMann v. Richardson, 397 U.S. 759 (1970)).

Thus, when a petitioner challenges the voluntariness and/or intelligence of his/her plea based upon allegations of ineffective assistance of counsel, the two-prong standard set forth in

6

Strickland v. Washington, 466 U.S. 668 (1984), applies.  See Hill v. Lockhart, 474 U.S. 52, 58 (1985); see also Premo v. Moore, 131 S. Ct. 733, 737-38 (2011) (identifying Strickland as the clearly established federal law governing a habeas petitioner's challenge to his conviction obtained through a plea bargain). To obtain relief under Strickland, a petitioner must establish that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.

In a plea situation, the focus of Strickland's performance prong is "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"  Hill, 474 U.S. at 56-57 (quoting McMann, 397 U.S. at 771).  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Strickland, 466 U.S. at 689. Representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused.  See Stano v. Dugger, 921 F.2d 1125, 1150-51 (11th Cir. 1991).[3]

To meet Strickland"s prejudice prong in a plea situation, a petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process."

---

[3] See also, Strickland, 466 U.S. at 689 ("Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy"); Thomas v. Varner, 428 F. 3d 491, 499 (3d Cir. 2005) ("To overcome the Strickland presumption that, under the circumstances, a challenged action might be considered sound trial strategy, a habeas petitioner must show either that: (1) the suggested strategy (even if sound) was not in fact motivating counsel or, (2) that the actions could never be considered part of a sound strategy").

Hill, 474 U.S. at 59.  "It is not enough for [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding."  Strickland, 466 U.S. at 693.  Rather, the petitioner must demonstrate a reasonable probability that, but for counsel's errors, (s)he would not have pled guilty at all and would have insisted on going to trial.  See Hill, 474 U.S. at 58-59.  "Surmounting Strickland's high bar is never an easy task."  Padilla v. Kentucky, 130 S. Ct. 1473, 1485 (2010).  "Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult."  Richter, 131 S. Ct. at 788.  As the Richter Court explained:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so.  The Strickland standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Id. (citations omitted).[4]

Here, Petitioner asserts that the interpretative English-Spanish/Spanish-English services provided to him by his the interpreter (who was present and available to Petitioner at all times)

---

[4] In the recent past, the Supreme Court has examined the intersection of voluntariness and intelligence of a criminal defendant's plea agreement and the Strickland standard on numerous occasions.  See, e.g., Premo v. Moore, 131 S. Ct. 733 (holding that an inmate was not entitled to habeas relief based on ineffective assistance of counsel it was not unreasonable to find that counsel did not perform deficiently by failing to move to suppress a confession before advising the inmate to plead guilty or to find no prejudice in light of a second, admissible confession); compare Lafler v. Cooper, S. Ct. 1376 (2012) (the fact that an inmate received fair trial did not bear on the possibility of prejudice from counsel's erroneous legal advice which caused inmate to reject plea bargain).   Hence, these decisions stress the long-established two-prong principle namely, that: (a) what had or might have occurred during the trial has no relevance to the issue of voluntariness and intelligence of a criminal defendant's decision to take or reject a plea; and (b) a viable challenge to one's decision to take a plea must be based on a showing that, absent counsel's errors, the defendant would have not pled guilty at all.  See Hill, 474 U.S. at 58-59.

and by his bilingual counsel were not as perfect as Petitioner would have desired, and these imperfections might have prevented Petitioner from understanding the implications of his plea "fully." However, Petitioner's subjective beliefs to that effect do not and cannot serve as a valid basis for his habeas challenges.[5]

The record shows that, during his plea proceedings, Petitioner acknowledged that his counsel discussed with him the plea, paragraph by paragraph, that this discussion was conducted in Spanish and the trial court made a factual finding that Petitioner's counsel did, indeed, speak fluent Spanish and that Spanish was his counsel's native language.[6]

---

[5] The deficiency of Petitioner's position is most evident from review of a rather recent Court of Appeals case, Pabon v. Mahanoy, 654 F.3d 385 (3d Cir. 2011). Pabon involved prisoner Pabon's appeal of the dismissal of his pro se habeas petition as untimely, wherein Pabon argued that his complete inability to speak, read, or write English, coupled with the prison's absolute lack of Spanish-language legal materials and repeated denials of any translation materials, were extraordinary circumstances warranting equitable tolling. After articulating the general holding that a petitioner's :inability to read or understand English, combined with [complete] denial of access to translation or legal assistance, can constitute extraordinary circumstances that trigger equitable tolling," id. at 400, the Court of Appeals reversed the dismissal of Pabon's petition as time-barred, since "he . . . was repeatedly denied legal materials in Spanish or translation assistance." Pabon, 654 F.3d at 401. The holding of Pabon, thus, clearly establishes that: (a) one's inability to speak, read, or write English might be relevant to one's Section 2254 challenges; but (b) such relevance could exist only if the litigant is either denied all assistance in his/her native tongue or the assistance is so minimal that it is virtually absent. See, e.g., Lopez v. Phelps, 2011 U.S. Dist. LEXIS 135980 (D. Del. Nov. 28, 2011) (denying equitable tolling because ""Lopez does not contend that he was denied access to translation of such materials. In fact, the documents filed in this proceeding and in his state collateral proceedings are in English and well-written, indicating that Lopez was either proficient enough in the English language to complete the filings himself or that he received assistance in translating the English materials to Spanish and in drafting his filings in English"). Here, Petitioner's claims turn not on the assertion that he was completely ignorant of and could not comprehend the events of his plea proceedings; rather, he claims that he did not understand the intricacies of what was going on "fully" because the Spanish-English/English-Spanish interpretation provided to him was imperfect.

[6] A district court must give deference to factual determinations of state courts. See
(continued...)

Moreover, during his plea colloquy, Petitioner responded to defense counsel in English, showing sufficient command of English for the purposes of admitting the facts underlying his conviction. Specifically, the following statements were made under oath:

| | |
|---|---|
| Defense Counsel: | Saul Hernandez, you're pleading guilty to murder in the first degree? |
| Petitioner: | Yes. |
| Defense Counsel: | And that carries a maximum life sentence, which is 72 years, with 85 percent, which would mean approximately 67 years incarcerated. And the maximum fines are $200,000 . . . . You understand that, correct? |
| Petitioner: | Yes. |
| Defense Counsel: | You understand that you're going to have to tell the judge what you did; you're going to have to – you're going to have a conviction; you're giving up the right to remain silent; to confront witnesses; and to have a trial in this courtroom? |
| Petitioner: | Yes. |
| . . . | |
| Defense Counsel: | Now, we've spoken today for at least an hour, correct? |
| Petitioner: | Yes. |
| Defense Counsel: | We spoke the last time you were in court in May, correct? |
| Petitioner: | Yes. |
| Defense Counsel: | And you are entering this guilty plea freely and voluntarily, correct? |
| Petitioner: | Yes. |
| Defense Counsel: | If you recall, the date of March 15th, 2003 . . . |
| Petitioner: | Yes. |
| Defense Counsel: | . . . in Old Bridge in the park, were you with Irene Luengas? |
| Petitioner: | Yes. |

---

[6](...continued)
Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996). Federal courts "must presume that the factual findings of both state trial and appellate courts are correct, a presumption that can only be overcome on the basis of clear and convincing evidence to the contrary." Stevens v. Delaware Correctional Center, 295 F.3d 361, 368 (3d Cir. 2002); see also Werts v. Vaughn, 228 F.3d 178, 196 (3d Cir. 2000) (same, citing U.S.C. section 2254(e)(1)). Here, Petitioner does not offer this Court any clear and convincing evidence that his defense counsel was not fluent in Spanish: all he offers is his self-serving belief that his defense counsel's Spanish was not as perfect as Petitioner desired.

| | |
|---|---|
| Defense Counsel: | And you got in an argument, is that correct? |
| Petitioner: | Yes. |
| Defense Counsel: | And basically you punched her in the neck? |
| Petitioner: | Yes. |
| Defense Counsel: | Punched her three times in the neck, correct? |
| Petitioner: | Yes. |
| Defense Counsel: | And she fell? |
| Petitioner: | Yes. |
| Defense Counsel: | And you went to your car and got rope and some other rubber rope, correct? |
| Petitioner: | Yes. |
| Defense Counsel: | And basically what you did was you tied one of the ropes around her neck, correct? |
| Petitioner: | Yes. |
| Defense Counsel: | And what else did you do?  Why did you tie the rope around her neck? |
| Petitioner: | Because we had an argument and well – well, we had – I killed her, you know. |
| Defense Counsel: | The reason why you tied the rope is because you wanted to ensure and it was your intent to kill her? |
| Petitioner: | Yes. |
| Defense Counsel: | And you understand that by putting the rope around her neck, she would be asphyxiated? |
| Petitioner: | Yes. |
| Defense Counsel: | And you also put another rope where? |
| Petitioner: | Same, the neck. |
| Defense Counsel: | Okay. And it covered the chin area, correct? |
| Petitioner: | Yes. |

Id. at 2-5.

The plea transcript further reflects that the Prosecutor asked additional questions regarding Petitioner's understanding of the plea form, and that Petitioner agreed that defense counsel translated the plea form from English into Spanish:

| | |
|---|---|
| Prosecutor: | [Your defense counsel] went over the plea form with you, correct? |
| Petitioner: | Yes. |
| Prosecutor: | And [your defense counsel] spoke to you in Spanish, correct? |
| Petitioner: | Yes, yes. |

11

|  |  |
|---|---|
| Prosecutor: | [Asking both Petitioner and Petitioner's defense counsel] And for the record, [your defense counsel] speaks fluent Spanish, correct? |
| Defense counsel: | That's correct. |
| Trial Judge: | The Court acknowledges [the fact] that [Petitioner's defense counsel] speaks fluent Spanish. That is one of her [native] languages. . . . |
| Prosecutor: | So when [your defense counsel] went through the questions with you, she translated what was written on this [plea bargain agreement] form from English to Spanish and then you answered the questions in Spanish, and [your defense counsel] circled the appropriate English answer, correct? |
| Petitioner: | Yes. |
| . . . |  |
| Trial Judge: | The Court is satisfied . . . . For the record, [Petitioner's defense counsel is well known as being extremely fluent in Spanish. Not through school, but because that's her background, that's her nationality, that's her language. |

Docket Entry No. 10-1, at 5-6.

At no point during his colloquy with his counsel or in answering the Prosecutor's additional questions did Petitioner fail or refuse to answer a question, nor did he suggest that he was confused or unable to understand, partly or fully, any of the questions. Yet, now, as he did during his state PCR proceedings, Petitioner alleges that he did not understand the colloquy. Despite his professed understanding on the day of the colloquy that he could be sentenced to life imprisonment, he now asserts that he was hopeful that his trial judge might impose a sentence less than thirty years with a thirty-year parole disqualifier (which sentence was agreed to as a condition to the plea). See Docket Entries Nos. 13-2 and 13-3.

Petitioner made this same argument in his PCR application and that argument was denied by the trial court. The Appellate Division affirmed the trial court's decision, stating as follows:

> [Petitioner] has not shown either prong of the Strickland v. Washington' standard
> for determining ineffective assistance of counsel. . . . [Petitioner's] allegation that
> he did not receive accurate information about his exposure [to thirty years with a

12

> thirty-year parole disqualifier] is belied by the record. Although [Petitioner] claims that he needed an interpreter [to detail this issue to him further], the plea transcript indicates that he understood all aspects of the plea. He did not show signs of confusion or lack of understanding. He first raised this issue almost five years after the entry of the plea and sentence.

Docket Entry No. 14-3, at 3, certif. denied, Docket Entry No. 15-4 (replicating the decision by the Supreme Court of New Jersey).

The state courts' determination was not an unreasonable application of Supreme Court precedent. The cumulative circumstances gleaned from the record verify that Petitioner's plea was both voluntary and intelligent within the meaning of either prong of Strickland: Petitioner had an interpreter at his disposal at all times, but the interpreter's services did not have to be utilized since his counsel was bilingual and natively fluent in Petitioner's tongue. Petitioner verified his understanding of the plea time and again, and Petitioner displayed no signs of misunderstanding, uncertainty or confusion. Therefore, Petitioner failed to show any errors in his counsel's conduct suggesting that Petitioner would have rejected the plea had he been given "more translations" and would have insisted on proceeding to trial.

At most, his Petition shows his dissatisfaction in not receiving a shorter sentence than that negotiated by the prosecutor and defense counsel, and adopted by the trial judge. However, such remorse cannot serve as a basis for a viable claim. See, e.g., Roche v. Ricci, 2009 U.S. Dist. LEXIS 61136 (D.N.J. July 16, 2009) ("This Court agrees with the state courts that Petitioner's claims regarding his guilty plea are without merit. A review of the plea transcript demonstrates that Petitioner entered the plea knowing and voluntarily, and that the factual statement in support of the plea was sufficient. Petitioner was provided a Spanish interpreter. Upon counsel's questioning, Petitioner admitted shooting the victim five or six times with a

pistol. Petitioner stated that he understood everything, understood the sentence, and understood that he was waiving his right to trial"); Colon v. Ericson, 2008 U.S. Dist. LEXIS 115480 (E.D. Pa. Oct. 15, 2008) ("petitioner failed to satisfy the deficient performance prong of the standard for ineffective assistance of counsel. In addition, petitioner is unable to demonstrate that there is a 'reasonable probability that, but for counsel's alleged errors [ensuing from petitioner's claims of imperfect interpretation], he would not have pleaded guilty and would have insisted on going to trial'"); Colon v. Moore, 2005 U.S. Dist. LEXIS 36443 (D.N.J. Dec. 27, 2005) ("Petitioner's claim that he was not able to understand his attorney, nor the advice provided by said counsel because the attorney did not speak Spanish is entirely devoid of any merit. In fact, an interpreter was appointed by this court exactly for that purpose, namely, to eliminate any doubt that the defendant fully understood his constitutional rights prior to ultimately entering his guilty plea"); Rosario v. New Jersey, 2005 U.S. Dist. LEXIS 33452 (D.N.J. Dec. 13, 2005) ("given the totality of circumstances, the Court concludes that the guilty plea was entered voluntarily and with the requisite knowledge and understanding of its consequences"); Paulino v. Lavan, 2005 U.S. Dist. LEXIS 46335 (E.D. Pa. May 25, 2005) ("This court finds that the state court appropriately concluded that trial counsel was not ineffective for failing to request or procure an interpreter for his client. Petitioner spoke to the court, at length, without the assistance of an interpreter, thus, demonstrating basic English comprehension"); Choi Kim v. Klem, 2003 U.S. Dist. LEXIS 27805 (E.D. Pa. July 31, 2003) ("In the present case, in concluding that petitioner's claims did not warrant post conviction relief, the Superior Court found that petitioner was fully advised of the consequences of pleading guilty, through an interpreter, and that petitioner assured the Court that he was pleading of his own free will").

Therefore, for the purposes of Petitioner's ineffective assistance of counsel challenges with regard to his plea, Petitioner's claims are facially devoid of any factual predicate supporting these challenges. Accordingly, the Court must dismiss his challenge to his plea, since the state counts' findings were not unreasonable applications of the governing Supreme Court precedent.[7]

## B. Evidentiary Hearing

Petitioner's second ground raised in the original Petition asserts that his PCR court erred by not holding an evidentiary hearing on the issue of the effectiveness of Petitioner's defense counsel. However, Petitioner has no federal right to an evidentiary hearing or other relief denied by a state PCR court: infirmities in a state PCR proceeding do not raise constitutional questions in a federal habeas action. See Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998) ("what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation"). Since errors in Petitioner's state PCR proceedings, even if presumed present, were collateral to his conviction and sentence, they could not give rise to a claim for federal habeas relief. See

---

[7] The Court also takes notice of Petitioner's other claims against his trial judge, the prosecutor and defense counsel. In his amended Petition, Petitioner alleges that his trial judge "informed [him] of inadequate sentence . . . to 'force him into submitting a plea of guilty.'" Docket Entry No. 4, at 38. These challenges, being not presented to state courts, render the Petition a "mixed" petition subject to dismissal on the grounds of failure to exhaust Petitioner's challenges. See Rose v. Lundy, 455 U.S. at 522; Banks v. Horn, 126 F.3d 206, 212-14 (3d Cir. 1997). However, as noted supra, the Court can address even unexhausted challenges if such challenges are facially meritless, see 28 U.S.C. § 2254(b)(2), as it is the case here. Indeed, the transcript record recited by Petitioner himself in his amended Petition verified that Petitioner was informed the exact sentence he was facing (and which he indeed received). See id. at 38-39. While Petitioner now tries to characterize the statements made during his plea proceedings as "ambiguous," see id. at 39, the transcript itself is crystal clear and evinces no ambiguity of any sort. See id. Therefore, Petitioner's allegations, being also devoid of any factual predicate, do not warrant habeas relief.

Hassine, 160 F.3d at 954. Therefore, Petitioner's challenges based on denial of an evidentiary hearing are necessarily subject to dismissal for failure to assert a violation of his federal rights.

**C. Remaining Challenges**

The foregoing analysis leaves the Court only with Petitioner's challenges added in his amended Petition. However, all these challenges are unexhausted (during his direct appeal, Petitioner challenged only the length of his sentence, while during his PCR proceedings he challenged only the performance of his defense counsel), hence rendering the Petition subject to dismissal as "mixed." Moreover, these challenges are also subject to prejudicial dismissal pursuant to the Court's power to resort to the mandate of 28 U.S.C. § 2254(b)(2) (allowing the Court to address unexhausted facially meritless claims). Since Petitioner entered a guilty plea, all his challenges other than those asserting that his plea was involuntary/unintelligent are necessarily barred. See Tollett v. Henderson, 411 U.S. at 267. Therefore, while Petitioner now desires to assert a score of new claims and strives to relitigate his entire criminal prosecution, Petitioner cannot do so: his challenges that, inter alia, the prosecutor committed misconduct, that the sentence imposed upon Petitioner was illegally lengthy, that Petitioner was denied his right to a fair trial, that Petitioner's counsel failed to investigate the "intoxication" defense, are necessarily barred – Petitioner's guilty plea conclusively bars this Court from conducting review of any of these matters. In other words, under § 2254(b)(2), these challenges are not cognizable and necessarily subject to dismissal – regardless of being unexhausted.[8]

---

[8] Respondents did not clarify the basis for their election not to address the multitude of Petitioner's claims added to the original two challenges and comprising the bulk of Petitioner's 51-page amended Petition. However, the Court assumes that Respondents' election ensued expressly from the bar on additional challenges ensuing from Petitioner's taking a guilty plea
(continued...)

## IV.  CERTIFICATE OF APPEALABILITY

The Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2).  See Miller-El v. Cockrell, 537 U.S. 322 (2003).

## V.  CONCLUSION

Based on the foregoing, the Court dismisses the Petition with prejudice and declines to issue a certificate of appealability under 28 U.S.C. § 2253(c).

    /s/ Freda L. Wolfson
**Freda L. Wolfson,
United States District Judge**

Dated:  July 16, 2012

---

[8](...continued)
(and, potentially, from Petitioner's failure to exhaust all these additional challenges). Correspondingly, Petitioner's application to strike Respondents' answer for "failure to prosecute" (which application is included in Petitioner's traverse) is denied, as both are meritless and moot.